UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CW INTERNATIONAL SALES LLC, doing business as Crystal Ware<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL SOURCE, LTD.; GLOBAL SOURCE, LLC as successor to GLOBAL SOURCE, LTD.; GREG BREDICE; CV2LABS LLC; NATURAL SOLUTIONS COMPANY INTERNATIONAL INC doing business as NATURAL SOLUTIONS; PROFESSIONAL PROTECTION PRODUCTS & EQUIPMENT LLC doing business as PRO PPE LLC;<br><br>Defendants. | Civil Action No. 22-06120 (RK) (RLS)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Greg Bredice ("Bredice") and Global Source, LLC ("Global") (together, the "GS Defendants") seeking to dismiss all claims against them set forth in the Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 20.)[1] Plaintiff CW International Sales LLC ("Plaintiff") filed a brief in opposition, (ECF No. 28), and GS Defendants filed a reply brief, (ECF No. 29). The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

---

[1] The FAC alleges fourteen counts, only two of which—Counts One and Two—are asserted against Bredice and Global Source, LLC. Therefore, GS Defendants only seek dismissal of the two counts against them.

For the reasons set forth below, the Motion to Dismiss is **GRANTED** with respect to Plaintiff's claim for attorney's fees and **DENIED** in all other respects.

I.  **BACKGROUND**

Plaintiff is CW International Sales LLC, a New Jersey limited liability corporation that manufactures and imports gloves, cutlery, and paper products. (First Amended Complaint ("FAC") ¶¶ 1–3, ECF No. 14.)[2] GS Defendants are Global and its managing member, Bredice. (*Id.* ¶¶ 9, 11.) In October 2020, Bredice was the Executive Vice President of Sales of Global's predecessor company. (*Id.* ¶ 10.)[3]

In October 2020, Plaintiff sought to buy vinyl gloves in response to the increased demand for personal protective equipment ("PPE") caused by the COVID-19 pandemic. (*Id.* ¶ 28.) Bredice was a "known broker in the PPE industry" and, as an "agent" of non-moving Defendant CV2Labs LLC ("CV2"), approached Plaintiff to broker a deal between Plaintiff and CV2 for the sale of vinyl gloves. (*Id.* ¶ 29.) On October 20, 2020, Bredice emailed Plaintiff setting forth the specific terms for purchasing the vinyl gloves. (*Id.* ¶ 31.) In the email, Bredice stated:

> "All [purchase orders] must be sent by 10/23 and funded by 10/28 for November shipping . . . Terms [of the deposit] – 50% with [purchase order], 40% Before Shipping, 10% after arrival . . . All deposits guaranteed with bank letter."

(*Id.*) CW was concerned that its deposit funds would be held outside the United States; Bredice assuaged this concern by representing "that CW's deposit funds would remain in the country." (*Id.* ¶ 38.) The FAC alleges that, but for Bredice's assertion in his email that "all deposits [were]

---

[2] For the purpose of GS Defendants' pending Motion to Dismiss, the Court accepts as true the facts alleged in the FAC are true.

[3] In October 2020, at the time of the events relevant to this matter, Bredice was the Executive Vice President of Sales at Global Source, Ltd. (FAC ¶ 10.) In November 2020, Global Source, Ltd. merged with Global Source, LLC, (*id.* ¶ 12), and Global Source, LLC succeeded to Global Source Ltd.'s debts, liabilities, and obligations, (*id.* ¶ 13). Bredice is currently a managing member of Global Source, LLC. (*Id.* ¶ 11.)

2

guaranteed with [a] bank letter," the Plaintiff would not have wired the funds. (*Id.* ¶ 40.) CV2 later claimed that it never instructed Bredice to include a guaranty on the deposit to Plaintiff as a term of their agreement and that "Bredice took it upon himself to assert that the Wire was guaranteed." (*Id.* ¶¶ 56–57.) On October 29, 2020, Plaintiff placed twenty purchase orders for 72,000 cases of vinyl gloves at $53 per case, wiring $954,000 to CV2 as a deposit. (*Id.* ¶ 41.) On November 2, 2020, CV2 and Bredice confirmed receipt of the wire to Plaintiff. (*Id.* ¶ 43.)

Notwithstanding, Plaintiff contends that it never received any vinyl gloves. (*Id.* ¶ 45.) In January 2021, Plaintiff negotiated with Defendants to recover its money or have the gloves delivered. (*Id.* ¶ 77.) After unsuccessfully attempting for three months to obtain the gloves from CV2, Plaintiff demanded its deposit back. (*Id.* ¶ 50.) Thereafter, CV2 and Bredice advised Plaintiff that CV2 assigned its interest in the purchase orders to non-moving Defendant Professional Protection Products & Equipment LLC ("ProPPE"). (*Id.* ¶ 61.) ProPPE informed Plaintiff that CV2 sent a letter advising them that non-moving Defendant Natural Solutions Company International Inc ("Natural Solutions") would act as "paymaster and escrow point" for CV2's funds and that CV2 had wired the funds to Natural Solutions. (*Id.* ¶¶ 67, 68.) Eventually, $75,000 was wired back to Plaintiff, but it never received the remaining deposit or vinyl gloves. (*Id.* ¶ 77.)

Plaintiff filed its initial Complaint on October 18, 2022, and the FAC on March 20, 2023. (ECF No. 14.) The FAC named all Defendants that were involved in the deal for which $879,000 was never refunded and which Plaintiff alleges resulted in "finger pointing" among the Defendants over who was responsible for the vanished deposit. (ECF No. 1.) The FAC alleges twelve counts against non-moving Defendants, including breach of contract, conversion, breach of fiduciary duty, civil conspiracy, unjust enrichment, and other related torts. (ECF No. 14.)

Plaintiff brings two claims for negligent misrepresentation against GS Defendants. (Compl. ¶¶ 82–116.) The FAC alleges that Bredice "had a duty to make accurate representations" to Plaintiff by "holding himself out" as either a "dealer broker" of CV2 or its "representative or agent" in dealing with Plaintiff. (*Id.* ¶¶ 88–89.) Plaintiff also claims that Bredice owed a duty to "confirm the accuracy of the material representations" it made to Plaintiff about the bank letter. (*Id.* ¶ 91.) Plaintiff complains that Bredice represented "that the Wire and transaction were guaranteed with a bank letter without confirming" this was true with CV2. (*Id.* ¶ 84.) Further, CV2 "claims that a letter of credit or other bank guarantee of [Plaintiff's] Deposit was not part of any terms to the deal offered by CV2 . . . [and] any representation by Bredice that [Plaintiff's] funds were guaranteed [] were not an accurate statement of fact regarding the terms of CV2's offer." (*Id.* ¶¶ 56–57.) Plaintiff relied on this representation and Bredice's "reputation in the industry" in making its deposit, and the deposit was in fact not guaranteed with a bank letter. (*Id.* ¶¶ 85, 95–96.) Plaintiff also brings a negligent misrepresentation claim against Global because Bredice was acting as Global's predecessor's "agent" with respect to this transaction. (*Id.* ¶¶ 100–03.)

## II.  LEGAL STANDARD

For a complaint to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" may be disregarded. *Id.* at 679. Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). Even if plausibly

pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015). The court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

### III. DISCUSSION

GS Defendants argue that Plaintiff's negligent misrepresentation claims against them should be dismissed for two reasons: (1) Plaintiff failed to plead sufficient facts to establish its claims; and (2) the economic loss doctrine bars Plaintiff's claims. (ECF No. 20.) For purposes of the subject motion, at this preliminary juncture, the Court finds that Plaintiff sufficiently plead its negligent misrepresentation claims and such claims are not barred by the economic loss doctrine.

To make out a negligent misrepresentation claim under New Jersey law, a plaintiff must show that the "defendant negligently provided false information and that plaintiff incurred damages proximately caused by its reliance on that information." *Highlands Ins. Co. v. Hobbs Grp., LLC.*, 373 F.3d 347, 351 (3d Cir. 2004). As with any tort of negligence, a negligent misrepresentation claim "requires the plaintiff to prove that the putative tortfeasor breached a duty of care owed to plaintiff." *Id.* A defendant may therefore owe a duty and be held liable "to any reasonably foreseeable recipient who relies on the information" the defendant provides. *Id.* Whether a duty exists is a question of law to be decided by the court. *See Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, 2013 WL 1431680 at *9 (D.N.J. Apr. 9, 2013) (citing *Carter v. Lincoln-Mercury, Inc. v. EMAR Group, Inc.*, 638 A.2d 1289, 1291 (1994)). Because the duty arises under state law, a federal court must predict whether the New Jersey Supreme Court would

5

recognize a duty under the circumstances of the case at bar. *See Highlands,* 373 F.3d at 351 (citing *City Check Cashing, Inc. v. Mfrs. Hanover Tr. Co.,* 764 A.2d 411, 416 (N.J. 2001)).[4]

### A. DUTY

GS Defendants contend that Plaintiff fails to establish a duty running from GS Defendants to Plaintiff. (ECF No. 20 at 5–12.) GS Defendants argue that because the FAC alleges that Bredice was "the broker or agent for CV2," (*id.* at 7 (emphasis in original)), any duty could flow only to CV2 because "Bredice's alleged representation was made for the benefit of CV2 – not [Plaintiff]," (*id.* at 8). Thus, according to GS Defendants, "to the extent that Bredice owed a duty of care to anyone involved with the transaction between CV2 and CW, the duty was owed to CV2, as Bredice's putative principal." (*Id.* at 10.) GS Defendants also contend that the fact that Plaintiff allegedly relied on Bredice's "reputation in the industry" does not give rise to a duty. (*Id.* at 7.) GS Defendants characterize Plaintiff as a third-party with whom GS Defendants "operated at arm's length on the opposing side of a potential future transaction." (*Id.* at 10.)

In response, Plaintiff argues that the Second Restatement of Torts, which New Jersey has adopted, creates a duty for a party that "supplies false information for the guidance of others in their business transactions." (ECF No. 28 at 9–10 (citing Restatement (Second) of Torts § 552).) As "a reasonably foreseeable recipient of misinformation who relied on the information," Plaintiff contends that GS Defendants' had a duty to "provide accurate information." (ECF 28 at 10.) Plaintiff argues that CS Defendants knew a deposit guaranty was not part of the deal terms and

---

[4] GS Defendants do not contest the following elements of Plaintiff's negligent misrepresentation claim – that Plaintiff relied on the misinformation and suffered economic harm as a result of the reliance in the form of losing its deposit without receiving any goods.

failed to confirm this statement with CV2, thereby violating CS Defendants' duty under the Restatement. (FAC ¶¶ 56, 57; ECF No. 28 at 8-9.)[5]

The Second Restatement of Torts, which New Jersey has adopted, creates a duty of "reasonable care or competence in [ ] communicating [ ] information…to a reasonably foreseeable recipient" by a party "who…, in any [ ] transaction in which he has a pecuniary interest, supplies false information for the guidance of [the recipient]." (Restatement (Second) of Torts § 552). To qualify as misrepresentation under the Restatement, "any false statements" made by a defendant must be "for the benefit or guidance" of the plaintiff. *CEM Bus. Sols., Inc. v. BHI Energy,* 2022 WL 17960729 at *2 (D.N.J. Dec. 27, 2022). "The guiding principle for the imposition of liability" in a negligent misrepresentation claim is the considerations of "fairness and foreseeability." *Highlands,* 373 F.3d at 352; *see also Carter Lincoln-Mercury,* 638 A.2d at 1288. "Knowledge or special reason to know of the consequences of the tortious conduct in terms of the persons likely to be victimized and the nature of the damages likely to be suffered will suffice to impose a duty upon the tortfeasor not to interfere with economic well-being of third parties." *See People Exp. Airlines, Inc. v. Consol. Rail Corp.,* 495 A.2d 107, 113 (1985) As a result, knowledge of a misrepresentation gives rise to a duty of care with regard to communicating that misrepresentation if the plaintiff is a "reasonably foreseeable recipient of [the] misinformation

---

[5] Plaintiff also points to the Uniform Commercial Code ("UCC"), which New Jersey has adopted and imposes on "every *contract or duty* within the UCC . . . an obligation of good faith in its performance or enforcement." (*Id.* at 10 (citing N.J. Stat. Ann. § 12A:1-201(a)(20)).) Because the transaction involved the sale of goods between two merchants, Plaintiff contends the instant transaction fell under the UCC, (*see* Article 2 of UCC), and by providing inaccurate information about the deposit, GS Defendants violated their duty under the UCC. (*Id.* at 10.) However, the UCC's implied duty only arises when a *contract* exists. The Official Comments to N.J. Stat. Ann. § 12A:1-304 reinforce this interpretation by underscoring that the statutory duty of good faith under the UCC necessitates the existence of a contract and "does not support an independent cause of action for failure to perform or enforce in good faith . . . [and it] does not create a separate duty of fairness and reasonableness which can be independently breached." *See* The Official Comments to N.J. Stat. Ann. § 12A:1-304. The Court agrees with GS Defendants that the UCC does not provide a basis for a duty to Plaintiff in the instant case because no contract exists between the parties.

who relied on the information." *Highlands,* 373 F.3d at 351 (citing *Karu v. Feldman,* 574 A.2d 420, 425 (1990)).

The existence of a duty here turns on whether the FAC adequately pleads that (1) GS Defendants had a duty to Plaintiff on account of knowing or having reason to know that "All Deposits Guaranteed with Bank Letter" was a misrepresentation, (2) that GS Defendants communicated the statement for Plaintiff's "benefit and guidance," and (3) Plaintiff was a reasonably foreseeable recipient.

The Court will first address GS Defendants' argument that they have no duty to the Plaintiff, as a third-party in an arms-length commercial transaction.[6] (ECF No. 20 at 7.) However, New Jersey courts have recognized a duty to disclose or confirm information when the defendant has knowledge of the misrepresentation. *See e.g., People Exp. Airlines,* 495 A.2d at 107; *Highlands,* 373 F.3d at 351. In *Highlands,* the Third Circuit found a broker-defendant owed a non-client third party a duty to disclose when the broker-defendant knew that the plaintiff relied on a false set of facts. *See Highlands,* 373 F.3d at 355. Likewise, in *Oscar Mayer Corp. v. Mincing Trading Corp.,* the court found a Defendant-spice broker had no duty to its principal to inspect goods *absent knowledge* of any reason such goods were damaged. *See Oscar Mayer Corp. v. Mincing Trading Corp.,* 744 F. Supp. 79 (D.N.J. 1990). In *Oscar,* the court specifically notes that "knowledge or notice of facts that would put a prudent person on inquiry" would create an independent duty on behalf of the broker to a reasonably foreseeable recipient. *Id.* at 82; *see also*

---

[6] GS Defendants also cite *Goodman v. UBS Fin. Servs., Inc.* for the proposition that a plaintiff must assert "some identifiable source of a special duty of care" in the commercial context. *Goodman v. UBS Fin. Servs., Inc., No.* 2022 WL 2358403 (D.N.J. June 30, 2022). However, the analysis in *Goodman* is inapposite because the contested contract was governed by New York Law, and the court applied New York law to the facts of the case. *Id.* at *1. New York imposes a "specialized relationship" requirement in negligent misrepresentation cases not found under New Jersey law. *See Prudential,* 2013 WL 1431680 at *8 (explaining the "special relationship requirement that exists to state a claim under New York Law" does not exist under New Jersey Law).

8

*Singer v. Beach Trading Co., Inc.* 876 A.2d 885, 892 (App. Div. 2005) (finding that a defendant-employer owed a duty of care in reporting accurate information to former plaintiff-employee when defendant-employer voluntarily offered incorrect information to party seeking reference on plaintiff-employee).

In short, in *Singer*, *Highlands*, and *Oscar*, a duty to exercise reasonable care in communicating information arose between a broker and a third-party when a broker had knowledge of facts reasonably likely to cause harm. *See v. Beach Trading Co., Inc.* 876 A.2d 885, 893 (App. Div. 2005); *Highlands,* 373 F.3d at 351; *Oscar,* 744 F. Supp. At 79; *see also, People Exp. Airlines,* 100A.2d at 114. Such is the case here. The FAC alleges that GS Defendants knew "a guaranty of the deposit" and "promise to keep the deposit in the [U.S.]" were not terms of the deal, yet nonetheless communicated such terms to Plaintiff in the contract with CV2. (FAC ¶¶ 38, 57–59.) As alleged in the FAC, GS Defendants knew their statements concerning Plaintiff's deposit did not reflect CV2's position, and as the agent of CV2, GS Defendants had a duty to confirm or not communicate a known misrepresentation before relaying it to the reasonably foreseeable Plaintiff.

Next, the Court turns to GS Defendants' argument that their statements were not for the "benefit and guidance" of the Plaintiff, as required by the Restatement, but rather were designed to entice the Plaintiff to engage in an arms-length transaction. *See* Restatement (Second) of Torts § 552; *see also Com. Bancorp, Inc. v. BK Int'l Ins. Brokers, Ltd.,* 490 F. Supp. 2d 556 (D.N.J. 2007) (holding that "[plaintiff] d[id] not allege that [defendant] made the alleged assurances for [plaintiff's] 'benefit and guidance'" and instead defendant "made the assurances to further its own interests, to the detriment of [plaintiff]."); *CEM,* 2022 WL 17960729 at *2 (holding defendants' statements that "knowingly oversold and misstated [their] expertise, capability, and

9

resources . . . to entice plaintiff to hire [them]" were not deemed to be for the benefit and guidance of the plaintiff). To the contrary, in this case, Plaintiff specifically alleges that CS Defendants' representations and assurances "all deposits guaranteed with bank letter" served to benefit the Plaintiff. (FAC ¶ 31.)

Finally, the Court turns to GS Defendants' argument that Plaintiff was not a reasonably foreseeable recipient because GS Defendants were in an agency-principal relationship with CV2, not Plaintiff. (ECF No. 20 at 10.) GS Defendants argue that foreseeability alone is insufficient to establish a duty in this case. (*Id.* at 8.) The Court agrees. *See Montclair State Univ. v. Oracle USA, Inc.,* 2012 WL 3657427 at *11 (D.N.J. Aug. 23, 2012). However, foreseeability is but one aspect of the Restatement's requirements for a negligent misrepresentation claim that Plaintiff adequately pleads. *See* Restatement (Second) of Torts § 552*Montclair State Univ. v. Oracle USA, Inc.,* 2012 WL 3657427 at *11 (D.N.J. Aug. 23, 2012). When evaluating foreseeability, courts take into account the "relationship between the plaintiff and the broker, the nature of the risk and the defendants' ability and opportunity to exercise care and avert harm." *Highlands,* 373 F.3d at 352; *see also People Exp. Airlines,* A.2d at 116 (noting "the more particular is the foreseeability that economic loss will be suffered by the plaintiff as a result of defendant's negligence, the more just is it that liability be imposed and recovery allowed."). In *Highlands,* the court found that the defendant's principal-agent relationship with the third-party, and not the plaintiff, "in no way vitiates the impact of the close working relationship between the [defendant] and the [plaintiff], as evidenced by the nature and volume of communications between them." *Id.* at 353. With regard to the nature of the risk, the *Highlands*' court found that "by definition the absence of protection for [the plaintiffs] in the event of [the third-party's] default is precisely the peril that would necessarily follow from the failure to have obtained the surety bond." *Id.* Similarly, in the case at bar, the GS

Defendants communicated all the deal terms, including the details about Plaintiff's deposit. The fact that CV2 hired GS Defendants as an agent does not diminish the relationship between Plaintiff and GS Defendants. Further, like in *Highlands*, Plaintiff's inability to recoup on their deposit is precisely the type of harm that flows from GS Defendants' misrepresentation that the deposit would be guaranteed by a bank letter.[7] As a result, the Court finds that Plaintiff was a reasonably foreseeable recipient of GS Defendants' misrepresentation.

Accordingly, at the present pre-discovery preliminary posture, for purposes of the pending motion to dismiss, the Court finds that (1) the GS Defendants knew of the misrepresentations, (2) Plaintiff was a reasonably foreseeable recipient of the misrepresentations, and (3) GS Defendants provided the information for the "benefit and guidance" of Plaintiff. Thus, GS Defendants owed a duty of reasonable care in communicating such information.

### B.   INCORRECT STATEMENT OF PAST OR EXISTING FACT

Next, GS Defendants argue that Plaintiff's negligent misrepresentation claims fail because the contested misrepresentation that "all deposits [are] guaranteed with bank letter" related to a future event because Bredice made this statement before Plaintiff sent the deposit. (ECF 20 at 15.) As a result, "there were no deposits to guarantee" at the time of Bredice's misrepresentation. (*Id.* at 16.) Further, GS Defendants argue, the statement does not say who would guarantee the deposit and "the unidentified entity to provide the hypothetical guarantee in an unidentified amount could only provide such a guarantee after" Plaintiff placed their purchase orders and deposit. (*Id.* at 17.)

---

[7] GS Defendants argue that the instant case is distinguishable from *Highlands* because the parties in *Highlands* were "in the insurance industry and the court imposed a duty of care under those circumstances expressly because the parties were involved in a 'specialized relationship.'" (ECF No. 29 at 5.) The Court disagrees. The *Highlands* court specifically noted that its analysis extended beyond the surety-bond and insurance context by employing the foreseeability-plus-fairness analysis to evaluate the existence or nonexistence of a duty. *Highlands,* 373 F.3d at 353.

Courts in this District have found that "vague" and "ill-defined" statements of future events "[are] not actionable misrepresentations." *Bergen Beverage Distributors LLC v. E. Distributors, Inc.*, 2022 WL 83337 at *24 (D.N.J. Mar. 21, 2022); *see also Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435–36 (D.N.J. 1998) (explaining that that "future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations."); *Pai v. DRX Urgent Care LLC*, 2014 WL 837158 at *12 (D.N.J. Mar. 4, 2014) ( explaining that a claim "must be predicated on a statement of present or past fact.")

In response, Plaintiff contends that the status of its deposit "was susceptible of exact knowledge" when Bredice made the statement, and thus, was not mere puffery concerning a future event. (ECF No. 28 at 12 (citing *Alexander,* 991 F. Supp at 435).)[8] Further, Plaintiff contends that false "assurances of fact" constitute misrepresentations. (ECF No. 28 at 11) (citing *Bergen*, 2022 WL 83337 at *8). The Court agrees with Plaintiff's position that Bredice's statements regarding the deposit constitutes a "false assurance of fact," rather than "puffery" or a "vague" and "ill-defined opinion." (*Id.*) For example, in *VT Investors v. R&D Funding Corp.*, a court in this District found a statement that a company "would generate positive cash flow in excess of $60,000 per month" was puffery "because it is such an emphatic statement of opinion." 733 F. Supp. 823, 838 (D.N.J. 1990). By contrast, in the instant case, Bredice's assurance that Plaintiff's deposits were guaranteed by bank letter and would remain in the country are statements of fact, not opinion. The court interprets the clear statement that "all deposits guaranteed with bank letter" is a statement of existing fact. *See Bergen,* 2022 WL 83337 at *8 (noting that a negligent misrepresentation claim

---

[8] GS Defendants argue in a footnote that Plaintiff's negligent misrepresentation claim against Global Source, LLC should fail because Plaintiff bases the claim solely on successor entity liability and "do not allege Global Source, LLC made any representations to [Plaintiff] independent of the statement made by Bredice." (ECF No. 20 at 14.) However, "[a]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076, n.6 (3d Cir. 1997).

requires plaintiff to assert that defendant "made an incorrect statement of a past or existing fact.") Further , such statements were misstatements. *See Mason v. Levine,* 382 N.J. Super. 181 (App. Div. 2005) (finding the defendants' assurance that they had "no intention to avoid its responsibilities" as non-actionable, not because it was too vague or related to a future event, but because the plaintiffs failed to show it was a misstatement.) Plaintiff alleges that GS Defendants knew such misrepresentations were not a proposed deal term by CV2 when Bredice sent his email to Plaintiff. (FAC ¶¶ 38, 57–59). As a result, it is inconsequential that Bredice made this statement before Plaintiff provided its deposit.[9]

### C. ECONOMIC LOSS DOCTRINE

Finally, the Court turns to GS Defendants' arguments under the economic loss doctrine. GS Defendants argue that the economic loss doctrine bars Plaintiff's negligent misrepresentation claims because Plaintiff seeks to recover in tort economic losses that flow from the contract with CV2. (ECF No. 20 at 18.)

"The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 20 12) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)). The doctrine serves to "maintain the 'critical' distinctions between tort and contract actions." *G&F Graphic Servs. v. Graphic Innovators, Inc.*, 18 F. Supp.

---

[9] GS Defendants argue that Plaintiff's arguments pertaining to GS Defendants' alleged promises to keep the deposit in the U.S. are improper because the Plaintiff never alleges that the deposit in fact left the country or "invokes that alleged representation as a basis for its claims for negligent misrepresentation." (ECF No. 29 at 10.) (*citing Regina v. Tullet Prebon Ams. Corp.*, 2017 WL 3429348 at *5 (D.N.J. Aug. 8, 2017) (holding that a "plaintiff may not supplement the amended complaint by providing new facts in his opposition brief). Because Plaintiff asserted the allegation in the FAC and incorporated by reference those paragraphs into her negligent misrepresentation counts, the Court disagrees that statement was newly raised in Plaintiff's brief in opposition. (FAC ¶¶ 38, 82 stating "CW incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.)

13

3d 583, 588 (D.N.J. 2014) (quoting *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 277 (N.J. 2002)). The economic loss doctrine bars recovery for tort claims "where there is no identified duty owed independent of an underlying contractual relationship." *Saltiel*, 788 A.2d at 278. Because the Court found that GS Defendants owed Plaintiff an independent duty to confirm or accurately communicate CV2's deal terms, the economic loss doctrine does not prohibit Plaintiff from recovering in this case.[10]

To reiterate, at this preliminary posture, before a fuller record can be developed through discovery, the Court finds that the Plaintiff has offered sufficient facts to allege its negligent misrepresentation claims when giving the Plaintiff "every favorable inference" to be drawn from the Amended Complaint. *Kulwicki*, 969 F.2d at 1462.

---

[10] CS Defendants' final argument relates to Plaintiff's demand in the FAC for attorney's fees. (FAC ¶ 116). New Jersey follows the American Rule, "which requires litigants to bear their own litigation costs, regardless of who prevails." *Innes v. Marzano-Lesnevich*, 224 N.J. 584, 592 (2016). However, the prevailing party may recover attorney's fees if "they are expressly provided for by statute, court rule, or contract." (*Id.*) Plaintiff has failed to point to any statute, court ruling, or contract that entitles Plaintiff to shift counsel fees. Accordingly, the Court grants CS Defendants' motion to dismiss with respect to Plaintiff's request for attorney's fees.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiff's claim for attorney's fees and **DENIED** in all other respects. An appropriate Order accompanies this Memorandum Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: April 8, 2024