**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

<table>
<tr>
<td>

CW INTERNATIONAL SALES LLC, doing business as CRYSTAL WARE,

      Plaintiff,

            v.

GLOBAL SOURCE, LTD.; GLOBAL SOURCE, LLC as successor to GLOBAL SOURCE, LTD.; GREG BREDICE; CV2LABS LLC; NATURAL SOLUTIONS COMPANY INTERNATIONAL INC. doing business as NATURAL SOLUTIONS; PROFESSIONAL PROTECTION PRODUCTS & EQUIPMENT LLC doing business as PRO PPE LLC,

      Defendants.

</td>
<td>

Civil Action No. 22-06120 (RK) (RLS)

**<u>MEMORANDUM ORDER</u>**

</td>
</tr>
</table>

**<u>KIRSCH, District Judge</u>**

      **THIS MATTER** comes before the Court upon the Motions for Default Judgment filed by Plaintiff CW International Sales LLC ("Plaintiff") against Defendants Natural Solutions Company International Inc. ("Natural Solutions"), CV2 Labs, LLC ("CV2"), and Professional Protection Products & Equipment LLC ("ProPPE") (collectively, the "Defaulted Defendants"). ("Motions," ECF Nos. 65, 67–68.)

      As the Court detailed in its previous Memorandum Opinion, this nearly four-year-old contractual dispute centers on an undelivered and unrefunded order of vinyl gloves. *See CW Int'l Sales LLC v. Glob. Source, Ltd.*, No. 22-6120, 2024 WL 1521355, at \*1–2 (D.N.J. Apr. 8, 2024). In October 2020, Plaintiff, in response to the increased demand for personal protective equipment

("PPE"), attempted to buy vinyl gloves from Defendant CV2, with Defendants Global Source, Limited (and later Defendant Global Source, LLC[1]) and its Executive Vice President of Sales, Defendant Greg Bredice, (collectively, the "GS Defendants") brokering the deal. *Id.* at *1 & n.3. Based on representations from Mr. Bredice that its deposit would be guaranteed by bank letter, Plaintiff purchased 72,000 cases of vinyl gloves at $53 per case, wiring $954,000 to CV2 as a deposit. *Id.* at *1. Plaintiff never received the gloves. *Id.* at *2. After months of unsuccessful attempts at negotiation, Plaintiff demanded its deposit back from CV2. *Id.* Only then did Plaintiff learn that CV2 had assigned its interest in the contract to Defendant ProPPE, and that Plaintiff's deposit was now held by the new "paymaster and escrow point" Defendant Natural Solutions. *Id.* With assistance from Mr. Bredice, Natural Solutions eventually returned $75,000 of the $954,000 deposit to Plaintiff, but Plaintiff never received its remaining deposit or the gloves. *Id.*; ("FAC," ECF No. 14 ¶¶ 75–79.)

Plaintiff filed its initial Complaint in October 2022, (ECF No. 1), which it amended on March 20, 2023, (FAC). All five Defendants waived service. (ECF Nos. 4–8.) The FAC sought the remaining deposit amount of $879,000 from all Defendants, "plus mitigation costs, lost profits, expenses, interest, costs, and attorneys' fees." (*See generally* FAC.) Against the GS Defendants, Plaintiff asserted claims of negligent misrepresentation. (*Id.* ¶¶ 82–116.) Against various combinations of the Defaulted Defendants, Plaintiff asserted twelve (12) counts for breach of contract, conversion, breach of fiduciary duty, civil conspiracy, unjust enrichment, and other related tort and contract claims. (*Id.* ¶¶ 117–225.)

---

[1] While Plaintiff named six total Defendants in the FAC, the parties appear to agree that Global Source, Ltd. no longer exists following a merger with Global Source, LLC. (FAC ¶¶ 12–13 (describing the merger, according to which Global Source, LLC succeeded Global Source Ltd. in all debts, liabilities, and obligations); ECF No. 62 (the parties jointly referring to Global Source, Ltd. as "Predecessor GS").)

In February 2023, counsel for ProPPE and the GS Defendants entered appearances. (ECF Nos. 9, 11.) Concurrent with his appearance, counsel for ProPPE, Jeffrey A. Carr, requested additional time to answer or otherwise respond to the Complaint pursuant to Local Rule 6.1, which the Clerk granted. (ECF No. 10; Docket Entry dated Mar. 1, 2023.) Following this single logistical request, Mr. Carr made no further filings or representations of any kind on behalf of ProPPE, nor did anyone else purporting to represent ProPPE take any action in this case. Following a motion to dismiss from the GS Defendants, Plaintiff amended its complaint, which it served on all Defendants. (ECF Nos. 12, 15; FAC.) The GS Defendants filed another motion to dismiss the two counts in the FAC against them, and the case was transferred to the undersigned. (ECF Nos. 20, 27.)

On September 11, 2023, almost ten months after waiving service, Byunghwan Chay, the President of Defendant Natural Solutions, filed, without counsel, a purported answer. (ECF Nos. 30, 30-1.) As explained in the Court's Order following an October 4, 2023, status conference—which Mr. Chay and Natural Solutions failed to attend—this "answer" from Natural Solutions was defective, as "a corporation may not proceed in a matter pro se." (ECF No. 32 (citing *United States v. Cocivera*, 104 F.3d 566, 572 (3d Cir. 1996)).) The Court gave Natural Solutions "an opportunity to participate in this case before Plaintiff seeks a default judgment against it" and ordered Natural Solutions to retain counsel within 14 days. (*Id.*) Although, per Plaintiff, Mr. Chay electronically acknowledged receipt of this Order by email on October 5, 2023, neither he nor anyone representing Natural Solutions have appeared or participated in this action in the two-and-a-half years since. (ECF No. 33.) CV2, for its part, has not appeared or otherwise defended against this action at any point.[2]

---

[2] To summarize, following Plaintiff's commencement of suit on October 18, 2022, each of the three Defendants executed waivers of service (and ProPPE, through counsel, obtained a further extension of its

On April 8, 2024, the Court granted in part and denied in part the GS Defendants' motion, dismissing only Plaintiff's claim for attorney's fees but denying the motion in all other respects. *See CW Int'l Sales LLC*, 2024 WL 1521355, at *7. The GS Defendants subsequently answered, and, at least with respect to those Defendants, the case continued apace with no further action by Natural Solutions (which never properly appeared in this case) or ProPPE, and no appearance whatsoever from CV2. (ECF No. 40.) On February 19, 2025, more than two years after it initially filed suit and well after relevant the Defaulting Defendants' response deadlines, *see* note 2 *supra*, Plaintiff requested the Clerk's entry of default against Natural Solutions, ProPPE, and CV2, (ECF No. 53), which the Clerk granted the next day, (Docket Entry dated Feb. 20, 2025).

Following more than a year of discovery and at least five status conferences with the Honorable Rukhsanah L. Singh, U.S.M.J., Plaintiff and the GS Defendants settled and stipulated to dismissal on January 29, 2026, which the Court promptly ordered. (ECF Nos. 62–63.) A little over a month later, on March 3 and 4, 2026, Plaintiff filed the instant Motions for Default Judgment against Natural Solutions, CV2, and ProPPE. (ECF Nos. 65, 67–68.)

Having considered Plaintiff's Motions and accompanying submissions, the Court directs Plaintiff, within fourteen days of this Memorandum Order, to submit a single, consolidated certification and proposed order to the Court for each of its Motions. That certification must explain, with reasoning and citation to relevant law and factual record, each of the following: (1) why this Court has personal jurisdiction over CV2, Natural Solutions, and ProPPE and subject

---

deadline) such that their responsive pleading deadlines as to the initial Complaint were December 19, 2022 (Natural Solutions), January 10, 2023 (CV2), and March 14, 2023 (ProPPE). (ECF Nos. 1, 4, 5, 8–10.) None of the three Defendants filed a timely responsive pleading. On March 20, 2023, Plaintiff filed its FAC, and the only subsequent action by any of the three Defaulting Defendants was the September 11, 2023 attempt by the President of Defendant Natural Solutions to appear and answer on behalf of the corporation. (ECF No. 30; FAC.) Natural Solutions failed to retain counsel by the October 2023 deadline ordered by the Court (or at any point thereafter). (ECF No. 32.) Three years have now passed since Plaintiff filed its FAC, and almost four years have passed since Plaintiff filed suit.

matter jurisdiction over the case, *see Farmlind Produce, LLC v. Sickles Mkt., LLC*, No. 24-3746, 2024 WL 3509488, at *4–5 (D.N.J. July 23, 2024), (2) why Plaintiff has properly served CV2, Natural Solutions, and ProPPE under Federal Rules of Civil Procedure 4 and 5, *see Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011); *Auto. Rentals, Inc. v. BAMA Com. Leasing LLC*, No. 17-3877, 2018 WL 1469047, at *1 n.1 (D.N.J. Mar. 26, 2018), (3) why the allegations of the FAC state a claim upon which relief may be granted for each claim on which Plaintiff seeks a default judgment (i.e., show why each element of the claim(s) underlying the request for default judgment is made plausible by one or more allegations in the FAC), *see Farmlind Produce*, 2024 WL 3509488, at *5–6, (4) why the Third Circuit's relevant default judgment factors support the entry of default judgment, *see Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984), and (5) why the amount of damages requested for any legally viable claim is correct, *see Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2–3 (D.N.J. July 17, 2013) (proving damages by "detailed affidavits and documentary evidence").

The Court acknowledges that some of these topics are addressed in Plaintiff's briefs in support of its Motions. (ECF Nos. 65-2, 67-2, 68-2.) However, not all have not been sufficiently analyzed consistent with the Court's standard practice. *See, e.g.*, *Farmlind Produce*, 2024 WL 3509488, at *5–9 (granting default judgment in multi-count case where plaintiffs had (1) clearly established sufficiency of complaint by specifically pleading each claim element, (2) established that the default judgment factors weighed in their favor, and (3) provided sufficient documentary evidence to establish damages against multiple defendants as a sum certain); *Pension Benefit Guar. Corp. v. Com. Investigation & Adjustment Co., Inc.*, No. 23-3097, 2023 WL 8718115, at *4–8

(D.N.J. Dec. 18, 2023) (similar).[3] In preparing its certification, the Court directs Plaintiff to specify for which claims it is actually seeking default judgment, given the overlapping—and potentially duplicative or mutually exclusive—nature of its various contract, quasi-contract, and tort claims. *See Sun Nat'l Bank v. Seaford Specialty Surgery Ctr., LLC*, No. 13-5800, 2016 WL 6154894, at *3 (D.N.J. Oct. 20, 2016) (denying default judgment on plaintiff's alternative contractual claims where it was entitled to default judgment on standard breach of contract claim); *New Lond. Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 413–15 (6th Cir. 2022) (reversing default judgment on fraud claims under economic loss doctrine where plaintiff was already entitled to breach of contract damages); *see also O'Toole v. Philips Elecs. N. Am. Corp.*, No. 04-1730, 2006 WL 3019698, at *6 (D.N.J. Oct. 23, 2006) (explaining that a plaintiff may not recover for the tort of conversion where the real conduct at issue is breach of contract). In light of the default posture of this case, counsel may choose to proceed under a single cause of action if it so chooses for purposes of streamlining and efficiency. In addition, Plaintiff must also provide *evidence* with its certification to support the award of a sum certain for damages *with respect to those claims it seeks default judgment upon*; Plaintiff must substantiate a sum certain of damages in the form(s) of evidence required for those specific claims. *See, e.g.*, *Farmlind Produce*, 2024 WL 3509488, at *7–8 (substantiating breach of contract claims with account statements and invoices).

---

[3] Courtesy copies of *Farmlind Produce* and *Pension Benefit Guar. Corp.* have been attached as appendices to this Memorandum Order.

**THEREFORE**, it is on this 10<u>th</u> day of April, 2026, **ORDERED** that:

I. Plaintiff shall file, within fourteen (14) days, a single, consolidated certification and proposed order consistent with this Memorandum Order explaining its entitlement to default judgment against Defendants CV2, Natural Solutions, and ProPPE under applicable law, and

II. The Motions pending at ECF Nos. 65, 67, and 68 are to remain open pending further order from the Court.

           _____

           **ROBERT KIRSCH**
           **UNITED STATES DISTRICT JUDGE**

Case 3:22-cv-06120-RK-RLS    Document 72    Filed 04/10/26    Page 8 of 22 PageID: 461

Farmlind Produce, LLC v. Sickles Market, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 3509488

2024 WL 3509488
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States District Court, D. New Jersey.

FARMLIND PRODUCE, LLC, et al., Plaintiffs,

v.

SICKLES MARKET, LLC, et al., Defendants.

Civil Action No. 24-3746 (RK) (RLS)
|
Signed July 23, 2024

**Attorneys and Law Firms**

David W. Fassett, Arseneault & Fassett, LLP, Chatham, NJ, for Plaintiffs.

Daniel M. Stolz, Genova Burns LLC, Basking Ridge, NJ, for Defendant Robert H. Sickles.

Andrew J. Kelly, Kelly & Brennan, PC, Spring Lake, NJ, for Defendants TST Beverages, LLC, AHS Realty, LLC.

<u>**MEMORANDUM OPINION**</u>

KIRSCH, District Judge

 **\*1  THIS MATTER** comes before the Court upon a Motion for Default Judgment, ("MDJ," ECF No. 37), filed by Plaintiffs Farmlind Produce, LLC and Four Seasons Produce, Inc. (collectively, "Plaintiffs"). The Court has considered Plaintiffs' Motion and its accompanying submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiffs' Motion is **GRANTED**.

## I. BACKGROUND

### a. Statutory Background

Congress enacted the Perishable Agricultural Commodities Act ("PACA") "to promote fair trading practices in the produce industry." *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 135 (3d Cir. 2000) (citation omitted). Under PACA, all "perishable agricultural commodities, inventories of food or other derivative products, and any receivables or proceeds from the sale of such commodities or products, are to be held in a non-segregated floating trust for the benefit of unpaid sellers." *Id.* at 136; *see also* 7 U.S.C. § 499e(c). A PACA trust "is created by operation of law upon the purchase of such goods, and the produce buyer is the statutory trustee." *Tanimura*, 222 F.3d at 136. "To protect the assets of the trust, the unpaid supplier must give the trustee written notice of intent to preserve the trust within thirty calendar days after payment was due ... Alternatively, the unpaid seller may provide notice of intent through its ordinary and usual billing or invoice statements." *Id.* (citing 7 U.S.C. § 499e(c)(4)).

A buyer or trustee violates PACA if it fails to maintain the PACA trust or fails to "make full payment promptly" to the seller or trust beneficiary. 7 U.S.C. § 499b(4). Buyers are also "required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities"—any act or omission inconsistent with this responsibility, including dissipation of trust assets, is prohibited. 7 C.F.R. § 46.46(d)(1). Dissipation of trust assets is defined as any act or omission that could result in the diversion of trust assets or the impairment of a seller's ability to recover money owed. *Id.* at § 46.46(b)(2).

### b. Factual Background

This case arises from the financial decline of the Sickles family. Robert Sickles, Jr. ("Mr. Sickles") owns multiple companies: Sickles Market, LLC ("Sickles Market"), Sickles Provisions, LLC ("Sickles Provisions"), and Sickles Management, Inc. ("Sickles Management") as well as TST Beverages, LLC d/b/a Bottles by Sickles ("TST Beverages") and AHS Realty, LLC ("AHS Realty"). (ECF No. 22-1 ("Second Amended Complaint" or "SAC") ¶ 4e; 14–15.) Plaintiffs are two companies engaged in the business of selling wholesale perishable agricultural commodities ("Produce") and are licensed as such under PACA. (SAC ¶ 3a–b.) Plaintiffs filed this action on March 18, 2024 to enforce a PACA trust against Mr. Sickles as well as Sickles Market, Sickles Provisions, and Sickles Management. (*See* "Compl.," ECF No. 1.) Sickles Market and Sickles Provisions were also engaged in the business of buying and selling produce and were also licensed as such under PACA, while Sickles Management was engaged in the business of managing the operations and assets of Sickles Market and Sickles Provisions. (SAC ¶ 4a–c.) On March 25, 2024, Plaintiffs filed an Amended Complaint which added TST Beverages, which

Case 3:22-cv-06120-RK-RLS    Document 72    Filed 04/10/26    Page 9 of 22 PageID: 462

Farmlind Produce, LLC v. Sickles Market, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 3509488

was engaged in operating a liquor store, and AHS Realty—the real estate holding company that owned the land upon which Sickles Market was located in Little Silver, New Jersey as well as an adjacent farm. ("FAC," ECF No. 6.) Mr. Sickles was a "principal, member, and/or officer" of Sickles Market, Sickles Provisions, Sickles Management, TST Beverages, and AHS Realty and occupied a position of control over the PACA trust assets allegedly belonging to Plaintiffs. (SAC ¶ 4e; *see also* FAC ¶ 4f.) [1]

**\*2** Between October 2023 and March 2024, Plaintiffs "sold and delivered to Sickles Market, in interstate commerce, $375,960.473 worth of wholesale quantities of perishable agricultural commodities ("Produce") and other goods ...." (SAC ¶ 5.) In addition, between November 2023 and January 2024, Plaintiffs "sold and delivered to Sickles Provisions, in interstate commerce, $23,697.96 worth of Produce and other goods ...." (*Id.* ¶ 6.)

Defendants received and accepted the Produce totaling the aggregate amount of $398,945.94. (*Id.* ¶ 7.) Thus, Plaintiffs became beneficiaries of a statutory trust under PACA (the "PACA trust"), "which is designed to assure payment to Produce suppliers and which consists of all Produce and Produce-related assets, including all funds commingled with funds from other sources and all assets procured by such funds, in the possession or control of Sickles Market and Sickles Provisions." (*Id.*) Plaintiffs submitted invoices to Defendants providing notice of intent to preserve PACA trust benefits. (*Id.* ¶ 8.) In addition to the aggregate principal amount owed for the Produce, the invoices also required Sickles Market and Sickles Provisions to pay interest on unpaid balances at a rate of 1.5% per month, plus all attorney's fees, as additional "sums owing in connection with this transaction under the PACA trust." (*Id.* ¶ 10.) The deadlines to pay for the Produce have long since expired, but Sickles Market and Sickles Provisions have failed to pay the principal debt that remains due and owing despite repeated demands by Plaintiffs. (*Id.* ¶ 11.)

Plaintiffs allege that Mr. Sickles and Sickles Management are jointly and severally liable with Sickles Market and Sickles Provisions for their statutory, regulatory, and contractual violations based on the invoices and under PACA. (*Id.* ¶¶ 13–15.) As for AHS Realty, Plaintiffs contend that AHS Realty "received and retained PACA trust assets from Sickles Market and/or Sickles Provisions in violation of the PACA trust, thereby subjecting its assets to a constructive trust under PACA for the benefit of Plaintiffs." (*Id.* ¶ 16.)

**c. Procedural History**

As noted above, Plaintiffs filed this case on March 18, 2024 against Mr. Sickles, Sickles Market, Sickles Provisions, and Sickles Management. (Compl.) That same day, Plaintiffs filed an Application for a Temporary Restraining Order Without Notice. ("TRO App.," ECF No. 1-4.) In it, Plaintiffs explained that Sickles Market had tendered three (3) Non-Sufficient Funds ("NSF") checks to Four Seasons, that both Sickles Market and Sickles Provisions had admitted their PACA trust debt due to Plaintiffs and the aggregate principal amount of that debt, and that both Sickles Market and Sickles Provisions had abruptly ceased operations and admitted that they lacked the funds to pay the debt due. (*Id.* at 2, 7, 15–16.) On March 20, 2024, the Court granted Plaintiffs' Application for a Temporary Restraining Order, which, *inter alia*, enjoined Defendants from "alienating, dissipating, paying over, or assigning any assets of Sickles Market, Sickles Provisions, and/or Sickles Management, including without limitation their accounts receivable, and those of its subsidiaries or related companies, except for payment to Plaintiffs, until further order of this Court or until Defendants pay Plaintiffs the aggregate sum ...." (the "Temporary Restraints"). ("TRO," ECF No. 3 at 8.)

On March 21, 2024, Plaintiffs' attorney submitted a certification demonstrating that the Summons, Complaint, and the Court's Temporary Restraining Order, along with the materials submitted in support thereof, had been served on each Defendant by Federal Express Overnight Delivery and by hand delivery. (*See* ECF No. 5.) On March 25, 2024, as noted above, Plaintiffs filed an Amended Complaint which added TST Beverages and AHS Realty, (FAC), and on March 27, 2024, Plaintiffs moved for a Preliminary Injunction, requesting that the Court extend the Temporary Restraints and impose same on the additional Defendants, ("PI Mot.," ECF No. 7). On April 5, 2024, TST Beverages and AHS Realty entered an appearance in this matter and filed a Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction. (ECF Nos. 10–13.) The Court held a hearing on Plaintiffs' Motion on April 9, 2024. (ECF No. 15.) At the hearing, the parties agreed in principle to a consent order extending the Temporary Restraints and applying same to TST Beverages and AHS Realty, with certain exceptions. (ECF No. 17.)

**\*3** However, the parties subsequently began to file letters on the docket indicating that the parties had been unable to

Farmlind Produce, LLC v. Sickles Market, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 3509488

agree upon the language of the consent order and asked that the hearing on the Motion for a Preliminary Injunction be rescheduled. (*See* ECF Nos. 16, 19, 20, 21, 23, 25, 26.) These letters also raised the possibility that Defendants would be initiating insolvency proceedings. (*Id.*) On April 24, 2024, Plaintiffs voluntarily dismissed TST Beverages due to TST Beverages having filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in proceedings captioned as *In re TST Beverages, LLC*, Case No. 24-14130, in the United States Bankruptcy Court for the District of New Jersey. (ECF No. 22-2.) On May 10, 2024, Plaintiffs filed a Suggestion of Bankruptcy, which represented that, on May 9, 2024, AHS Realty and Mr. Sickles had also filed for Chapter 11 bankruptcy in the following proceedings: *In re AHS Realty, LLC*, Case No. 24-14779, and *In re Robert H. Sickles*, Case No. 24-14781. (ECF No. 29.) Accordingly, Plaintiffs requested that this action be stayed as to Defendants AHS Realty and Mr. Sickles. (*Id.*)

Thus, the only remaining active Defendants in this case are Sickles Market, Sickles Provisions, and Sickles Management (the "Sickles Corporate Defendants")—each of which were served with process on March 21, 2024, but none of which have appeared in this action. (ECF No. 5.) The claims against these Defendants are as follows: Count One – Failure to Pay Trust Funds under PACA, (SAC ¶¶ 17–19); Count Two – Failure to Pay Promptly under PACA, (*id.* ¶¶ 20–22); Count Three – Breach of Contract – Failure to Pay for Goods Sold as to Sickles Market and Sickles Provisions, (*id.* ¶¶ 23–26); Count Five – Affiliated Entity as to Sickles Management, (*id.* ¶¶ 32–34); and Count Seven – Interest and Attorney's Fees, (*id.* ¶¶ 44–47).

On May 10, 2024, Plaintiffs filed a Request for Entry of Default as to the Sickles Corporate Defendants. (ECF No. 31.)[2] The Clerk of Court entered the default. On May 20, 2024, Plaintiffs filed a declaration in further support of its still-pending Motion for Preliminary Injunction. (ECF No. 34.) Plaintiffs pointed out that the Sickles Corporate Defendants had not appeared in the action and had not opposed Plaintiffs' Motion, and thus asked the Court to treat the Motion as unopposed. (*Id.*) On May 21, 2024, the Court entered an Unopposed Order Entering a Preliminary Injunction against the Sickles Corporate Defendants, enjoining them or their "customers, agents, officers, subsidiaries, attorneys, assigns, financial institutions, and factors from alienating, dissipating, paying over or assigning any assets, including without limitation any accounts receivable, of the Sickles Corporate Defendants,

and those of their subsidiaries or related companies, except for payment to Plaintiffs, until further order of this Court or until the Sickles Corporate Defendants pay Plaintiffs the aggregate sum [due to Plaintiffs], and to order the Sickles Corporate Defendants to turn over to Plaintiffs certain funds, documents, and other materials in their possession, custody, or control ...." (ECF No. 36.)

On June 7, 2024, Plaintiffs filed the present Motion for Default Judgment against the Sickles Corporate Defendants, which is now pending before the Court. (MDJ; *see also* ECF Nos. 38, 39.) The Sickles Corporate Defendants have not filed a brief in opposition or otherwise responded to Plaintiffs' Motion, which the Court now turns to.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a party to apply for and the court to enter default judgment against a party that fails to plead or otherwise defend claims asserted against it. Fed. R. Civ. P. 55(b)(2). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits ....' " *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). "Because the entry of a default judgment prevents the resolution of claims on the merits, '[the Third Circuit] does not favor entry of defaults and default judgments.' " *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

**\*4** Before entering a default judgment pursuant to Rule 55(b), a court performs a thorough analysis of a plaintiff's claims and entitlement to relief. *First*, the defendant must have been properly served. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). *Second*, the court must have subject matter jurisdiction over the dispute and personal jurisdiction over the parties. *See Mark TV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017). *Third*, the complaint must sufficiently state a cause of action. *See Chanel, Inc.*, 558 F. Supp. 2d at 536 (citing *Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). *Fourth*, the court must weigh the three default judgment factors: (1) whether the party subject to the default has a meritorious defense, (2) whether the party seeking default would be prejudiced without it, and (3) whether the default resulted from the defendant's culpable

Farmland Produce, LLC v. Sickles Market, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 3509488

conduct. *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp*, No. 20-9537, 2021 WL 1541054, at \*7 (D.N.J. Apr. 20, 2021) (citing *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at \*2 (D.N.J. July 24, 2015)). *Finally*, the plaintiff must have proven damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

### III. DISCUSSION

#### a. PROPER SERVICE

A court may only enter default judgment against defendants who were properly served. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at \*2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist*, 756 F.2d at19). When located in the United States, an entity defendant, such as a corporation or LLC, may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). The plaintiff "bears the burden of proof" of demonstrating service was proper. *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted). The plaintiff can meet this burden "by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Mills v. Ethicon*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019) (citation omitted).

On March 21, 2024, Plaintiffs submitted a certification demonstrating that the Summons and Complaint, along with all of the Temporary Restraining Order materials, had been served on each of the Sickles Corporate Defendants by Federal Express Overnight Delivery and by hand delivery. (*See* ECF No. 5). The certification contained the FedEx proof-of-delivery and an affidavit of service for each Sickles Corporate Defendant, demonstrating that each Summons and Complaint was served upon Tristan Sickles on March 21, 2024. (*Id.* at \*10, \*12, \*14); *see Super 8 Worldwide, Inc. v. Kusum, LLC*, No. 13-5603, 2015 WL 7761061, at \*3 (D.N.J. Dec. 1, 2015) (affidavits demonstrating that the summonses were returned executed establishes proper service). Accordingly, Plaintiffs have established by a preponderance of the evidence that the Sickles Corporate Defendants were properly served.

#### b. JURISDICTION

The Court next turns to whether it may exercise subject matter jurisdiction over this case and personal jurisdiction over the parties. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, which provides that the district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This action presents a federal question under Section 5(c)(5) of PACA, 7 U.S.C. §§ 499e(b) and 499e(c)(5). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiffs' related breach of contract claim against Sickles Market and Sickles Provisions.

**\*5** The Court may exercise personal jurisdiction over all three Sickles Corporate Defendants. Sickles Market and Sickles Provisions are New Jersey limited liability companies. (SAC ¶ 4a–b.) "[T]he citizenship of a limited liability company 'is determined by the citizenship of each of its members.' " *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 348 (3d Cir. 2013) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010)). Mr. Sickles is a member of Sickles Market and Sickles Provisions and is a resident of New Jersey, thus empowering this Court to exercise personal jurisdiction over his limited liability companies. (*Id.* ¶ 4e.) Sickles Management is a New Jersey corporation. (*Id.* ¶ 4c). Thus, the Court also has personal jurisdiction over Sickles Management based on its place of incorporation. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

#### c. SUFFICIENCY OF COMPLAINT

The third factor the Court must consider is "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 365 (D.N.J. 2008); *see also Animal Science Prods., Inc. v. China Nat'l Metals & Minerals Import & Export Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) ("A litigant's failure to state a claim upon which relief may be granted ... prevents the presiding court from entering a default judgment.").

In Counts One and Two, Plaintiffs have brought claims for failure to make prompt payments for shipments of Produce under PACA. (SAC ¶¶ 17–22.) In Count Five, Plaintiffs allege that Sickles Management is "affiliated with and/or related to" Sickles Market and Sickles Provisions, rendering it liable for Sickles Market and Sickles Provisions' PACA violations. (*Id.* ¶¶ 32–34.) As noted above, to protect a trust

under PACA, a produce seller must provide the buyer with written notice of its intent to preserve trust benefits—this requirement can be met through ordinary billing or invoice statements. *See Tanimura*, 222 F.3d at 136; 7 U.S.C. § 499e(c)(4). Thereafter, a buyer's failure to make prompt payments triggers civil liability under PACA. 7 U.S.C. § 499b(4); *see also Agri Exotic Trading, Inc. v. Patriot Fine Foods, LLC*, No. 22-4898, 2022 WL 16570625, at *2 (D.N.J. Nov. 1, 2022) (hereinafter "*Patriot*").[3] Plaintiffs have alleged that they, Sickles Market, and Sickles Provisions are all licensed dealers under PACA, (SAC ¶¶ 3–4; *see also* "Warhol Decl. ISO TRO App.," ECF No. 1-2 at *10–*14; "Lind Decl. ISO TRO App.," ECF No. 1-3 at *10–*14), and that Plaintiffs sold and delivered $375,960.473 worth of Produce to Sickles Market between October 2023 and March 2024 and $23,697.96 worth of Produce to Sickles Provisions between November 2023 and January 2024, (SAC ¶¶ 5–6). Plaintiffs further contend that upon receiving and accepting the produce, Plaintiffs became the beneficiaries in a statutory trust under PACA and that Plaintiffs timely preserved their interest in the PACA trust by delivering invoices containing the requisite statutory language. (*Id.* ¶¶ 7–8.) Finally, Plaintiffs allege that Sickles Management occupied a position of control over the PACA trust assets, which renders them jointly and severally liable for all debts due and owing by Sickles Market and Sickles Provisions. (*Id.* ¶¶ 14–15.) The Court finds that Plaintiffs have sufficiently pled PACA claims against the Sickles Corporate Defendants for failure to pay trust funds and to make full payment promptly. *See Patriot*, 2022 WL 16570625, at *3 (finding similar PACA allegations sufficient to grant a motion for default judgment).

**\*6** The Court also finds that Plaintiffs have set forth a legally sufficient breach of contract claim against Sickles Market and Sickles Provisions. To establish a breach of contract under New Jersey law, Plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (internal citation omitted). Under New Jersey law, a contract for the sale of goods "may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." N.J. Stat. Ann. § 12A:2-204(1). Here, Plaintiffs allege that Sickles Market and Sickles Provisions received and accepted the Produce and signed invoices for same, forming a contract for the sale of the Produce. (*See* SAC ¶¶ 7, 9; *see also* Warhol Decl. ISO TRO App. at *19–*54, *60–*71 (demonstrating signed invoices

for deliveries from Four Seasons); Lind Decl. ISO TRO App. at *21–*194 (demonstrating signed invoices for deliveries from Farmlind)); *see also Agri Exotic Trading, Inc. v. D Mart Rutherford LLC*, No. 21-17794, 2022 WL 180278, at *5 (D.N.J. Jan. 20, 2022) (hereinafter, "*D Mart Rutherford*") (finding a valid and enforceable contract where plaintiff sold and delivered produce to defendant who accepted and signed the invoices for same). Plaintiffs performed their obligations by delivering the Produce, which was accepted by Sickles Market and Sickles Provisions, and Sickles Market and Sickles Provisions breached the contract by failing to pay for the amount due and owing.

Similarly, in Count Seven, which pleads a claim for contractual interest and attorney's fees and costs, (SAC ¶¶ 44–47; *see also* "D. Fasset Decl. ISO MDJ," ECF No. 37-1 ¶¶ 5–18), Plaintiffs allege that under the terms of the invoices, Sickles Market and Sickles Provisions were required to pay interest on unpaid balances at a rate of 1.5% per month, plus attorneys' fees expended in connection with the transaction under the PACA trust. (*Id.* ¶ 10). This "theory of damages is straightforward and uncontroversial." *D Mart Rutherford*, 2022 WL 180278, at *5 (finding plaintiffs set forth legally sufficient breach of contract claim and explaining that damages based on defendant's failure to pay the principal amount plus interest and attorney's fees was "straightforward and uncontroversial"); *see also Rocheux Int'l of N.J., Inc. v. U.S. Merchants Fin. Grp., Inc.*, 741 F. Supp. 2d 651, 684–87 (D.N.J. 2010) (holding that a clause requiring buyer to pay attorneys' fee and interest on past due accounts, which was present in all invoices sent to buyer after delivery of each shipment was an enforceable term of the parties' contracts). Moreover, the Third Circuit has made clear that a PACA beneficiary may recover interest and fees due contractually or otherwise "in connection" with the transaction that is the subject of a PACA trust claim. *Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 286 (3d Cir. 2006) (citing *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1222–23 (9th Cir. 2002) ("The plain meaning of the PACA statute's words 'in connection with' encompasses not only the price of the perishable agricultural commodities but also additional related expenses, including contractual rights to attorneys'[ ] fees and interest, in a PACA claim.")).

### d. DEFAULT JUDGMENT FACTORS

Farmlind Produce, LLC v. Sickles Market, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 3509488

Next, the Court considers the three default judgment factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). The Court finds that each of the three factors weighs in favor of entering default judgment in this case.

First, in the absence of any responsive pleading, the Court's review of the Complaint reveals no meritorious defense open to the Sickles Corporate Defendants. *See Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896, 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012) ("assum[ing] that the Defendants have no litigable defenses available" because they "have not filed anything with the Court," "have offered no defense," and "the facts asserted in the complaint do not contain any information that could provide the basis for a meritorious defense"); *see also Rose Containerline, Inc. v. Omega Shipping Co.*, No. 10-4345, 2011 WL 1564637, at *3 (D.N.J. Apr. 25, 2011) (same); *Carpenters Health & Welfare Fund of Phila. v. NDK Gen. Contractors, Inc.*, No. 06-3283, 2007 WL 1018227, at *1 (E.D. Pa. Mar. 29, 2007) ("Defendant has filed no responsive pleading and the record before the court does not reveal any 'litigable defense.' The court must therefore presume that defendant has none."). In fact, the Sickles Corporate Defendants have never disputed their PACA trust debts due and owing to Plaintiffs. (*See* Warhol Decl., ISO TRO App. ¶ 15; Lind Decl. ISO TRO App. ¶ 15.)

 **\*7**  Second, Plaintiffs have been prejudiced by the Sickles Corporate Defendants' failure to appear, defend, or otherwise respond to the Complaint in this case because Plaintiffs have no other means of seeking relief from these Defendants. *See Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiffs] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."); *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff).

Finally, the Court finds the Sickles Corporate Defendants responsible for their failure to appear in this litigation because "there is nothing before the Court to show that [their] failure to file an answer was not willfully negligent." *Teamsters*

*Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at *4; *U.S. v. Cruz*, No. 20-3903, 2021 WL 1884862, at *2 (D.N.J. May 11, 2021) ("Defendants['] failure to answer or otherwise respond to the Complaint, without providing any reasonable explanation, permits the Court to draw an inference of culpability on its part."); *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) ("[T]here was nothing before the Court to suggest that anything other than [defendant's] willful negligence caused her failure to file an answer, and she was therefore culpable."). Indeed, there appears to be no question that the Sickles Corporate Defendants are aware of this action, especially as the attorney for Mr. Sickles filed a letter on the docket explaining the financial situation of the Sickles family and their businesses and that they had been cooperating with counsel for the PACA creditors. (*See* ECF No. 21.) Accordingly, each of the three default judgment factors counsels in favor of entering default judgment against the Sickles Corporate Defendants.

### e. **DAMAGES**

Finding default judgment warranted, the Court turns to the issue of damages. As noted above, while the factual allegations of a complaint are taken as true on a motion for default judgment, a plaintiff must prove the amount of damages with certainty. *Comdyne*, 908 F.2d at 1149. In order to determine whether a plaintiff has sufficiently proven damages, Rule 55(b) permits the Court to "conduct such hearings or order such references as it deems necessary and proper." *Id.* (quoting Fed. R. Civ. P. 55(b)(2)). However, the Court is not required to conduct such hearings "as long as it ensures that there is a basis for the damages specified in the default judgment," *Trucking Emps. of North Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-2782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citation and quotation marks omitted), such as when "detailed affidavits and documentary evidence" have been submitted to support the plaintiff's claim for damages. *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2–*3 (D.N.J. July 17, 2013) (citation omitted); *see also Comdyne*, 908 F.2d 1142 at 1149 (citation omitted) (damages sought at default judgment should be for a "sum certain or for a sum which can by computation be made certain ....").

Here, Plaintiffs request that the Court enter judgment against the Sickles Corporate Defendants as follows:

Farmlind is entitled to a judgment against all three Defendants, jointly and severally, under the PACA Claims in the aggregate principal amount of Farmlind's unpaid Produce sales to Sickles Market and Sickles Provisions of $213,218.94, plus contractual interest accrued through July 1, 2024, of $21,607.21, plus reasonable attorneys' fees and costs incurred through May 31, 2024, of $42,261.35, for a total judgment amount under the PACA Claims in favor of Farmlind and against Defendants, jointly and severally, of $277,087.53[;]

 **\*8** Four Seasons is entitled to a judgment against all three Defendants, jointly and severally, under the PACA Claims in the aggregate principal amount of Four Seasons unpaid Produce sales to Sickles Market and Sickles Provisions of $85,492.00, plus contractual interest accrued through July 1, 2024, of $9,735.61, plus reasonable attorneys' fees and costs incurred through May 31, 2024, of $18,021.49, for a total judgment amount under the PACA Claims in favor of Four Seasons and against Defendants, jointly and severally, of $113,249.10[;]

Four Seasons is also entitled to a separate judgment against Sickles Market under the Breach of Contract Claim in the principal amount of Four Seasons' unpaid non-Produce sales to Sickles Market of $4,729.86[;]

Four Seasons is entitled to a separate judgment against Sickles Provisions under the Breach of Contract Claim in the principal amount of Four Seasons' unpaid non-Produce sales to Sickles Provisions of $712.89.

(MDJ at \*6–\*7.)

The Court finds that Plaintiffs have submitted sufficient evidence to support their request, including the principal amount due and owing as well as the interest and attorney's fees and costs. Plaintiffs have attached their account statements for Sickles Market and Sickles Provisions, (Fasset Decl. ISO MDJ, Exs. 1, 2), and over two hundred pages of invoices for same, (Warhol Decl. ISO TRO App. at \*19–\*54, \*60–\*71; Lind Decl. ISO TRO App. at \*21–\*194). They have also submitted certifications from their attorneys explaining the calculation of the contractual interest due on the unpaid principal amounts owed to Plaintiffs. ("M.J. Fasset Decl. ISO MDJ," ECF No. 37-2, Exs. C–D.) Finally, Plaintiffs have submitted certifications from their attorneys containing detailed and itemized exhibits demonstrating attorney's fees and costs, including the tasks and hours of service performed, the experience levels and hourly billing rates of the attorneys, and the additional costs incurred, such as the costs of business records obtained and the costs incurred for Lexis research. (D. Fasset Decl. ISO MDJ ¶¶ 8–10, Ex. 3; M.J. Fasset Decl. ISO MDJ ¶¶ 1–7, Exs. A, B.) Based on Plaintiffs' submissions, the Court finds that Plaintiffs have adequately established damages in this case, including attorney's fees and costs, which appear reasonable and proportionate. *See D Mart Rutherford*, 2022 WL 180278, at \*5–\*6 (finding similar evidence sufficient to demonstrate damages on a motion for default judgment in a PACA case).[4]

### CONCLUSION

 **\*9** For the reasons set forth above, Plaintiffs' Motion for Default Judgment, (ECF No. 37), is **GRANTED,** and the Court enters default judgment against the Sickles Corporate Defendants. An appropriate Order and Judgment accompanies this Memorandum Opinion.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3509488

---

### Footnotes

1    On April 24, 2024, Plaintiffs filed a Second Amended Complaint, which added C. Rooney Produce, Co., Inc. ("Rooney") as a third Plaintiff, (SAC ¶ 3c), and removed TST Beverages, but which contained otherwise identical claims as in the First Amended Complaint. Shortly thereafter, on May 17, 2024, Rooney voluntarily dismissed its claims without prejudice. (ECF Nos. 32, 33.)

2024 WL 3509488

2    Plaintiffs initially filed a "motion" for default, which was terminated because Plaintiffs had not first filed a "request" for entry of default. (ECF No. 30.) A few days later, Plaintiffs filed the proper "request" for entry of default. (ECF No. 31.)

3    The Court refers to the *Agri Exotic Trading, Inc.* cases by the name of the defendants as this Opinion cites to multiple PACA cases in which Agri Exotic Trading, Inc. was the plaintiff.

4    Plaintiffs also request that the Court "authorize Plaintiffs' counsel to release from trust to Plaintiffs, in partial satisfaction of those judgments, the $45,642.42 in funds belonging to Defendants that Plaintiffs' counsel has received since entry of the preliminary injunction order on May 21, 2024. (MDJ at *6; *see also* ECF No. 36; D. Fasset Cert. ¶¶ 24–25.) On May 21, 2024, in its Unopposed Order Entering a Preliminary Injunction, the Court enjoined the Sickles Corporate Defendants' assets until further Order and ordered the Sickles Corporate Defendants to turn over all funds belonging to them or their subsidiaries or related companies, excluding TST Beverages and AHS Realty, to Plaintiffs' counsel for Plaintiffs' counsel to hold in trust pending further Order. (ECF No. 36.) Plaintiffs' counsel explained in a certification submitted to the Court that, since the Court's preliminary injunction order, a total of $45,642.42 in funds have been turned over and are being held in trust by Plaintiffs' counsel. (D. Fasset Cert. ¶¶ 24–25.) The Court hereby grants Plaintiffs' request that these funds be released to Plaintiffs.

---

**End of Document**        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:22-cv-06120-RK-RLS   Document 72   Filed 04/10/26   Page 16 of 22 PageID: 469

Pension Benefit Guaranty Corporation v. Commercial..., Not Reported in Fed....

2023 WL 8718115
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

PENSION BENEFIT GUARANTY
CORPORATION, Plaintiff,
v.
COMMERCIAL INVESTIGATION &
ADJUSTMENT CO., INC., Defendant.

Civil Action No. 23-3097 (RK) (RLS)
|
Signed December 18, 2023

**Attorneys and Law Firms**

Erika Barnes, Danielle E. Rodriguez, Pension Benefit Guaranty Corporation Office of the General Counsel, Washington, DC, for Plaintiff.

**MEMORANDUM OPINION**

KIRSCH, District Judge

**\*1 THIS MATTER** comes before the Court upon a Motion for Default Judgment filed by Plaintiff Pension Benefit Guaranty Corporation ("PBGC") against Defendant Commercial Investigation & Adjustment Co., Inc. ("Commercial Investigation"). (ECF No. 7.) The Court has considered PBGC's Motion and its accompanying submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, PBGC's Motion is **GRANTED.**

**I. BACKGROUND**

This action arises under Title IV of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301–1461.

**A. Statutory Framework**

PBGC is a wholly owned United States Government corporation established under 29 U.S.C. § 1302(a) within the Department of Labor to administer the pension plan termination insurance program created by Title IV of ERISA. (Complaint, ECF No. 1 ("Compl.") ¶ 1); *see also* 29 U.S.C.

§ 1302(a). Congress established PBGC to (1) encourage the continuation and maintenance of voluntary private pension plans for the benefit of their participants; (2) provide for the timely and uninterrupted payment of pension benefits to participants and beneficiaries under plans covered by Title IV of ERISA; and (3) maintain premiums at the lowest level possible. 29 U.S.C. § 1302(a).

ERISA authorizes PBGC to "make such investigations as it deems necessary to enforce any provision of this subchapter or any rule or regulation thereunder...." 29 U.S.C. § 1303(a). For the purpose of such investigations, PBGC may "subp[o]ena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which [PBGC] deems relevant or material to the inquiry." 29 U.S.C. § 1303(b). Furthermore, ERISA provides: "In the case of contumacy by, or refusal to obey a subpoena issued to, any person, [PBGC] may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records. The court may issue an order requiring such person to appear before [PBGC], or member or officer designated by [PBGC], and to produce records or to give testimony related to the matter under investigation or in question. Any failure to obey such order of the court may be punished by the court as a contempt thereof." 29 U.S.C. § 1303(b).

**B. Factual Background**

Commercial Investigation is a New Jersey corporation that established a tax-qualified, defined benefit retirement pension plan (the "Plan") under Title IV of ERISA for the exclusive benefit of its employees. (Compl. ¶¶ 12–13.) Commercial Investigation is the administrator of the Plan within the meaning of 29 U.S.C. §§ 1002(16)(A) and 1301(a)(1). (*Id.* ¶ 14.)

In January 2018, PBGC received an email from Commercial Investigation representing that it was experiencing financial hardship and was unable to pay the premiums and contributions owed under the Plan or pay for an actuary. (*Id.* ¶ 15.) Accordingly, PBGC initiated an investigation pursuant to 29 U.S.C. § 1303(a) into Commercial Investigation's failure to make its statutorily required payments. (*Id.*) Between January 2018 and August 2022, PBGC attempted to work with Commercial Investigation "to resolve its financial hardship

Case 3:22-cv-06120-RK-RLS  Document 72  Filed 04/10/26  Page 17 of 22 PageID: 470

Pension Benefit Guaranty Corporation v. Commercial..., Not Reported in Fed....

concerns and to discuss how Commercial Investigation will administer the Plan moving forward." (*Id.* ¶ 16.) On September 6, 2022, PBGC issued a subpoena to Commercial Investigation pursuant to its authority under 29 U.S.C. § 1303(b), requiring the production of previously requested documents and information by September 20, 2022. (*Id.* ¶ 17; Ex. C.)

**\*2** The subpoena was served upon Mr. Douglas O'Neill at his last known home address. (*Id.* ¶ 18; Ex. A ¶ 3.) Mr. O'Neill is listed in the New Jersey Division of Revenue and Enterprise Services' database as the president of Commercial Investigation. (*Id.*, Ex. B.). Two days after the subpoena was served upon Mr. O'Neill, he contacted PBGC via telephone to discuss same. (*Id.* ¶ 19; Ex. A ¶ 9.) Thereafter, Mr. O'Neill followed up with an e-mail summarizing the conversation and explaining "that he would be working with an actuary to respond to the subpoena." (*Id.* ¶ 20; Ex. E.) In response, PBGC requested regular updates. (*Id.* ¶ 21; Ex. A ¶ 10.) On September 27, 2022, PBGC contacted Commercial Investigation requesting an update; Mr. O'Neill responded that he was still gathering the requested information. (*Id.* ¶ 22.) This was the last time that PBGC heard from Commercial Investigation before filing this petition to enforce the subpoena; PBGC attempted to contact Commercial Investigation on November 10, 2022, November 29, 2022, December 12, 2022, January 4, 2023, and January 12, 2023 without receiving a response. (*Id.* ¶¶ 22–23; Ex. A ¶ 12.)

On June 6, 2023, PBGC filed a petition pursuant to Section 1303(c) in this Court to enforce the administrative subpoena issued to Commercial Investigation. (*Id.* ¶ 4.) PBGC requested four forms of relief: (1) "an order directing Commercial Investigation to appear, through a duly authorized representative, before the Court, upon a day fixed by said order, and to show cause why the Court should not issue a subsequent order directing Respondent to fully comply with the subpoena"; (2) "[u]pon return of the order to show cause, ... a subsequent order directing Commercial Investigation to produce any and all documents and records responsive to the subpoena to PBGC"; (3) an award of costs incurred by PBGC in maintaining this action; and (4) any other relief the Court deems appropriate. (*Id.* ¶ 24.) On June 13, 2023, PBGC filed an affidavit of service. (ECF No. 3.) On July 21, 2023, after Commercial Investigation failed to appear in this action, PBGC requested an Entry of Default, which the Clerk of the Court entered on July 24, 2023. (ECF No.

6.) Thereafter, on August 28, 2023, PBGC filed the pending Motion for Default Judgment. (ECF No. 7.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a party to apply for and the court to enter default judgment against a party that fails to plead or otherwise defend claims asserted against it. Fed. R. Civ. P. 55(b)(2). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits ....'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). "Because the entry of a default judgment prevents the resolution of claims on the merits, '[the Third Circuit] does not favor entry of defaults and default judgments.'" *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at \*2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Before entering a default judgment pursuant to Rule 55(b), a court performs a thorough analysis of a plaintiff's claims and entitlement to relief. *First*, the defendant must have been properly served. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). *Second*, the court must have subject matter jurisdiction over the dispute and personal jurisdiction over the parties. *See Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017). *Third*, the complaint must sufficiently state a cause of action. *See Chanel, Inc.*, 558 F. Supp. 2d at 536 (citing *Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at \*1 (D.N.J. Mar. 14, 2006)). *Fourth*, the court must weigh the three default judgment factors: (1) whether the party subject to the default has a meritorious defense, (2) whether the party seeking default would be prejudiced without it, and (3) whether the default resulted from the defendant's culpable conduct. *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp*, No. 20-9537, 2021 WL 1541054, at \*7 (D.N.J. Apr. 20, 2021) (citing *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at \*2 (D.N.J. July 24, 2015)). *Finally*, the plaintiff must have proven damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

## III. DISCUSSION

### A. Proper Service

**\*3** A court may only enter default judgment against defendants who were properly served. *Teamsters Pension*

Case 3:22-cv-06120-RK-RLS    Document 72    Filed 04/10/26    Page 18 of 22 PageID: 471

Pension Benefit Guaranty Corporation v. Commercial..., Not Reported in Fed....

*Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). The plaintiff "bears the burden of proof on that issue." *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted). The plaintiff can meet this burden "by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Mills v. Ethicon*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019) (citation omitted).

Commercial Investigation is a corporation. (Compl. ¶ 2.) A corporation located in the United States may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process ...." Fed. R. Civ. P. 4(h)(1)(B).

PBGC has established by a preponderance of the evidence that Commercial Investigation was properly served with the Summons and Complaint. PBGC filed an Affidavit of Service, indicating that Mr. O'Neill is Commercial Investigation's president and was personally served at his home address. (ECF No. 3; Compl., Ex. B; Ex. A, ¶ 3; *see also* ECF No. 7 ¶ 4.) PBGC also attaches, as an exhibit in support of its Motion, an email sent by Mr. O'Neill to PBGC's attorney on June 29, 2023, in which Mr. O'Neill acknowledges that he received the Summons. (ECF No. 7, ¶ 8; Ex. A ("I received your summons on Tuesday, June 14, 2023.").) Nothing in the record suggests that service was improper, and indeed Commercial Investigation has acknowledged that they know about this lawsuit. The Court therefore concludes that PBGC properly served Commercial Investigation in accordance with Federal Rule of Civil Procedure 4(h)(1)(B). [1]

### B. Jurisdiction

The Court next turns to whether it may exercise jurisdiction over the parties. "On a motion for default judgment, the Court takes as true all well-pleaded jurisdictional allegations in the Complaint to assess whether Plaintiff[ ] ha[s] made a prima facie showing of personal jurisdiction." *Victory's Dawn, Inc.*, 2022 WL 3402491, at *3 (citing *Allaham v. Naddaf*, 635 F. App'x 32, 36–37 (3d Cir. 2015)). The Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1303(c) and (e)(3). As noted above, when PBGC initiates an investigation into a corporation and the corporation or its representative refuses to comply with a subpoena, ERISA authorizes PBGC to "invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or

where such person or where such person resides or carries on business." 29 U.S.C. § 1303(c). Moreover, Section 1303(e)(3) provides that "[t]he district courts of the United States shall have jurisdiction of actions brought by the corporation under this subchapter without regard to the amount in controversy in any such action." 29 U.S.C. § 1303(e)(3).

**\*4** In this case, PBGC alleges that Commercial Investigation is a New Jersey corporation. In support thereof, PBGC submitted a record from the New Jersey Division of Revenue and Enterprise Services, which shows that Commercial Investigation maintains its principal executive office at 3301 Route 66, Building C, 2nd Floor, Neptune, New Jersey, 07753. (Compl. ¶ 2; Ex. A ¶ 2; Ex. B.) Accordingly, PBGC has demonstrated that Commercial Investigation resides or carries on business within the jurisdiction of this Court, and thus jurisdiction over this matter is proper under 29 U.S.C. § 1303(c). *See, e.g., Pension Benefit Guar. Corp. v. Panache Destination Mgmt.*, No. 21-80147, 2021 WL 5043118, at *3 (N.D. Cal. Sept. 10, 2021), report and recommendation adopted, No. 20-80147, 2021 WL 5037944 (N.D. Cal. Oct. 29, 2021), *and* report and recommendation adopted, No. 21-80147, 2021 WL 5050413 (N.D. Cal. Nov. 1, 2021) ("Here, PBGC has submitted a record from the California Secretary of State showing that Panache is an active California business whose address on file with the Secretary is in San Francisco, which shows that Panache resides or carries on business within the jurisdiction of this Court.").

### C. Sufficiency of Complaint

The third factor the Court must consider is "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 365 (D.N.J. 2008); *see also Animal Science Prods., Inc. v. China Nat'l Metals & Minerals Import & Export Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) ("A litigant's failure to state a claim upon which relief may be granted ... prevents the presiding court from entering a default judgment."). In order for a court to enter default judgment, a plaintiff must "establish[ ] that the essential elements of the pleaded claims are present and state[ ] factual allegations in support of these elements." *Animal Science Prods., Inc.*, 596 F. Supp. 2d at 848.

In this case, the Court must determine whether PBGC has stated a legitimate cause of action to enforce the administrative subpoena issued to Commercial Investigation. In the Third Circuit, judicial review of administrative

Case 3:22-cv-06120-RK-RLS    Document 72    Filed 04/10/26    Page 19 of 22 PageID: 472

Pension Benefit Guaranty Corporation v. Commercial..., Not Reported in Fed....

subpoenas is "strictly limited." *Univ. of Med. & Dentistry of New Jersey v. Corrigan,* 347 F.3d 57, 64 (3d Cir. 2003) (quoting *FTC v. Texaco,* 555 F.2d 862, 871–72 (D.C. Cir. 1977) (en banc)); *see also United States v. Nour Halal Meat Distrib., Inc.,* 505 F. Supp. 2d 275, 280 (W.D. Pa. 2007) ("It is well-established that administrative subpoena enforcement proceedings are summary in nature." (citation omitted)). "The ultimate inquiry ... is whether the enforcement of the administrative subpoena would constitute an abuse of the court's process." *Univ. of Med. & Dentistry of New Jersey,* 347 F.3d at 65 (quoting *Wheeling–Pittsburgh Steel Corp.,* 648 F.2d 118, 127 n.12 (3d Cir. 1981)). A court should enforce an administrative subpoena as long as: (1) the investigation "has a legitimate purpose"; (2) the inquiry is "relevant to that purpose"; (3) the agency "does not already possess the information requested"; (4) the agency has "complied with relevant administrative requirements"; and (5) the demand is "not unreasonably broad or burdensome." *E.E.O.C. v. Kronos Inc.,* 694 F.3d 351, 362 (3d Cir. 2012), as amended (Nov. 15, 2012).

### 1. Lawful Purpose

PBGC satisfies the first requirement of the Third Circuit's test. 29 U.S.C. § 1303(a) provides that PBGC "may make such investigations as it deems necessary to enforce any provision of this subchapter or any rule or regulation thereunder, and may require or permit any person to file with it a statement in writing, under oath or otherwise as [PBGC] shall determine, as to all the facts and circumstances concerning the matter to be investigated." 29 U.S.C. § 1303(b) provides that "[f]or the purpose of any such investigation, or any other proceeding under this subchapter, the Director, any member of the board of directors of [PBGC], or any officer designated by the Director or chairman, may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which [PBGC] deems relevant or material to the inquiry." Thus, it is clear that Congress has granted PBGC the authority to conduct investigations and issue subpoenas for that purpose.

### 2. Relevance

 **\*5** The second requirement is that PBGC's inquiry is relevant to its lawful purpose. The Third Circuit has explained that the relevance requirement is "broad" and "not particularly

onerous." *E.E.O.C. v. Kronos Inc.,* 620 F.3d 287, 296 (3d Cir. 2010). For example, for investigations conducted by the Equal Opportunity Employment Commission ("EEOC"), Courts "have traditionally allowed the EEOC access to *any* material that might cast light on the allegations against the employer." *Id.* (citations omitted) (emphasis added).

In furtherance of its investigation into whether Commercial Investigation has failed to make statutorily required payments, PBGC seeks information related to the Plan and to Commercial Investigation's financial condition. For example, PBGC's subpoena requests the Adjusted Funding Target Attainment Percentage ("AFTAP") or most recent Actuarial Valuation Report, Plan amendments, changes in Plan population, amounts paid under the Plan, and the market value of Plan assets and contributions, and requests the financial records for Commercial Investigation and Mr. O'Neill, the company's president. (Compl. at \*24, Ex. C.) It is clear that these straightforward requests are within the Third Circuit's broad definition of relevance. *See, e.g., Pension Benefit Guar. Corp. v. Micfo, LLC,* No. 20-114, 2021 WL 6849084, at \*2 (D.D.C. Mar. 2, 2021), report and recommendation adopted, No. 20-114, 2021 WL 6849088 (D.D.C. Mar. 17, 2021) (finding that PBGC's subpoena requests for information related to defendant's retirement plan and financial condition were relevant to PBGC's investigation of defendant's failure to make required contributions); *see also Panache Destination Mgmt.,* 2021 WL 5043118, at \*4 (finding PBGC's subpoena requests relevant to PBGC's investigation of defendant's failure to pay premiums given the low standard for relevance in the Ninth Circuit even where the Court is "not well-positioned to definitively determine" relevance).[2]

### 3. Possession of Requested Information

The third requirement is that PBGC does not already possess the information requested. While PBGC provides minimal information pertaining to whether any of the requested documents are already in its possession, nothing in the submissions provided to the Court suggest same. As for PBGC's request for the AFTAP or most recent Actuarial Valuation Report, the subpoena itself states that "[t]he most recent in PBGC's possession is the 2016 Actuarial Valuation Report." (Compl. \*24, Ex. C.) In addition, the subpoena affirmatively authorizes that Commercial Investigation need not produce any documents that have already been produced to PBGC. (*Id.* \*23, Ex. C.) Given the Third Circuit's

Case 3:22-cv-06120-RK-RLS    Document 72    Filed 04/10/26    Page 20 of 22 PageID: 473

Pension Benefit Guaranty Corporation v. Commercial..., Not Reported in Fed....

instruction that judicial review of administrative subpoenas should be strictly limited and summary in nature, the Court concludes that this third requirement has been met. [3]

#### 4. Compliance with Administrative Requirements

Next, the Court considers whether PBGC has complied with the relevant administrative requirements. ERISA expressly authorizes PBGC to "make such investigations as it deems necessary" and "require the production of any books, papers, correspondence, memoranda, or other records which [PBGC] deems relevant or material to the inquiry." 29 U.S.C. § 1303(a), (b). The text of ERISA does not impose any procedural requirements on the manner in which PBGC conducts investigations or issues subpoenas. Indeed, according to PBGC, "[n]either ERISA nor PBGC regulations require a specific means of service for administrative subpoenas issued by PBGC." (Compl. ¶ 11.)

**\*6** However, the Court notes that, in pursuing this matter, PBGC "has proceeded in accordance with due process of law and the orderly administration of justice." *Panache Destination Mgmt.*, 2021 WL 5043118, at \*3. PBGC served the administrative subpoena on Mr. O'Neill at his home address. (Compl. ¶ 18; Ex. D.) The subpoena provided fourteen (14) days to respond, (*id.* \*18, Ex. C), which would have been sufficient time to respond if the subpoena had been issued by a federal court in a lawsuit, *see* Fed. R. Civ. Proc. 45(d)(2)(B). Mr. O'Neill acknowledged receipt of the subpoena but nonetheless failed to respond after PBGC contacted Commercial Investigation no less than six (6) times over the course of five (5) months requesting an update on Commercial Investigation's response to the subpoena. (Compl. ¶¶ 20, 22–23; Ex. E.) ERISA provides that "[i]n the case of contumacy by, or refusal to obey a subpoena," PBGC may invoke the aid of this Court in requiring compliance with the subpoena. 29 U.S.C. § 1303(b). The Court thus finds that any applicable procedural requirements have been followed in this case. *See, e.g.*, *Panache Destination Mgmt.*, 2021 WL 5043118, at \*3 (finding that ERISA imposes no procedural requirements and that PBGC proceeded in accordance with due process of law and the orderly administration of justice by properly serving a subpoena on the defendant's designated agent, providing fourteen (14) days to respond, and filing suit in the proper jurisdiction).

#### 5. Breadth

The fifth and final requirement is that the subpoena issued to Commercial Investigation not be unreasonably broad or burdensome. As the Court noted above, PBGC's requests for information pertaining to the Plan and to Commercial Investigation's financial condition are relevant to Commercial Investigation's inability to make required payments. PBGC only requests the financial records for the last three years, (Compl. \*24, Ex. C), and it does not appear as though the subpoena is unreasonably burdensome. In failing to respond to PBGC's petition in this action, Commercial Investigation has not argued otherwise. The Court also notes that when Mr. O'Neill acknowledged receipt of the subpoena, he informed PBGC that Commercial Investigation had retained a new actuary and was working with the actuary to gather the required documents and information. (Compl. \*32, Ex. E.) Mr. O'Neill did not raise any concerns regarding the company's ability to collect the requested materials. The Court thus finds that PBGC's subpoena was neither overly broad nor unreasonably burdensome. *See, e.g.*, *Micfo, LLC*, 2021 WL 6849084 at \*2 (finding that PBGC's subpoena seeking information relating to the defendant's plan and financial condition was "neither too indefinite nor burdensome," especially in light of the defendant's failure to argue otherwise).

Accordingly, the Court concludes that PBGC has established a legitimate cause of action to enforce its administrative subpoena against Commercial Investigation in this Court.

#### D. **Default Judgment Factors**

Next the Court considers the three default judgment factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). The Court finds that each of the three factors weighs in favor of entering default judgment in this case.

First, the Court's review of the law and the facts alleged in the Complaint reveals no meritorious defense open to Commercial Investigation. Of course, "evaluation of the first factor is made difficult by defendants' failure to answer or to oppose the motion for default judgment." *Loc. 365 Pension*

Case 3:22-cv-06120-RK-RLS    Document 72    Filed 04/10/26    Page 21 of 22 PageID: 474

Pension Benefit Guaranty Corporation v. Commercial..., Not Reported in Fed....

*Fund*, 2021 WL 1976700, at \*3. As explained above, the Court's role in reviewing administrative subpoenas is strictly limited. As long as PBGC can show that the investigation is conducted pursuant to a lawful purpose, the inquiry is relevant and not unreasonably broad or burdensome, the information requested is not already within PBGC's possession, and any requisite administrative procedures have been followed, a district court should enforce the subpoena. *See Univ. of Med. & Dentistry of New Jersey*, 347 F.3d at 64. Where, as here, the administrative subpoena does not constitute an abuse of the court's process, there is no meritorious defense available to Commercial Investigation.

**\*7** The second and third factors also weigh in favor of granting default judgment. Commercial Investigation was served with the administrative subpoena and properly served with the Summons and Complaint in accordance with Federal Rule of Civil Procedure 4(h)(1)(B). Mr. O'Neill acknowledged, in writing, receipt of the subpoena, Summons, and Complaint but nonetheless failed to engage in this litigation in any way. (Compl. ¶¶ 20, 22–23; Ex. E; ECF No. 7 ¶ 8; Ex. A.) "It is clear that the plaintiffs have been prejudiced by this dereliction because they have been 'prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion.' " *Loc. 365 Pension Fund*, 2021 WL 1976700, at \*5 (quoting *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at \*4). Furthermore, "there is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at \*4 (citing *Prudential Ins. Co. of America v. Taylor*, No. 08-2108, 2009 WL 536403, at \*1 (D.N.J. Feb. 27, 2009)). In short, Commercial Investigation's unexplained failure to engage in this litigation notwithstanding its obvious awareness of same evidences its culpable conduct and the prejudice to PBGC if PBGC is not permitted to obtain relief through the Court entering default judgment.

### E. Remedies

While the Court accepts the Complaint's allegations as true, PBGC must nonetheless prove the amount of damages in order for the Court to enter default judgment in its favor. *See Comdyne I, Inc.*, 908 F.2d at 1149. In order to determine whether a plaintiff has sufficiently proven damages, Rule 55(b) permits the Court to "conduct such hearings or order such references as it deems necessary and proper." *Id.* (quoting Fed. R. Civ. P. 55(b)(2)). However, the Court is not required to conduct such hearings "as long as it

ensures that there is a basis for the damages specified in the default judgment," *Trucking Emps. of North Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-2782, 2009 WL 3584358, at \*3 (D.N.J. Oct. 27, 2009) (citation and quotation marks omitted), such as when "detailed affidavits and documentary evidence" have been submitted to support the plaintiff's claim for damages, *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at \*2–3 (D.N.J. July 17, 2013) (citation omitted). Furthermore, when a plaintiff seeks statutory damages, costs, and attorney's fees, a court may award damages without a hearing. *See Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398, at \*3 (D.N.J. Mar. 13, 2013).

In its Motion for Default Judgment, PBGC requests (1) an order directing Commercial Investigation to produce to PBGC any and all documents and records in response to the subpoena and (2) an award of costs in maintaining this action of in the amount of $1,088. (ECF No. 7 at 3–4.) PBGC is statutorily entitled to both forms of relief. First, the text of ERISA provides that the Court may issue an order requiring any person or corporation who refuses to obey a subpoena issued by PBGC to provide records in compliance with same. 29 U.S.C. § 1303(c). Subsection (c) even authorizes district courts to punish the failure to obey a PBGC subpoena as contempt of court. *Id.* Second, ERISA provides that PBGC is entitled the costs of litigation incurred by PBGC in connection with any action brought under Title IV. 29 U.S.C. § 1303(e)(5); *see also Micfo, LLC*, 2021 WL 6849084 at \*2 (finding that PBGC was entitled to costs under 29 U.S.C. § 1303(e)(5) as the prevailing party on a petition to enforce an administrative subpoena).

PBGC attorney, Danielle E. Rodriguez, provided a declaration establishing PBGC's costs in maintaining this action. (ECF No 7-3.) PBGC seeks $1,088, which is based on sixteen (16) hours of Ms. Rodriguez's time billed at $57 per hour and two (2) hours of Assistant General Counsel Erika E. Barnes's time billed at $88 per hour. The Court finds PBGC's requested fees reasonable and that PBGC has adequately supported its claims for the time spent litigating this matter. Therefore, the Court grants PBGC's request for attorney's fees in the amount of $1,088 against Commercial Investigation.

### IV. CONCLUSION
**\*8** For the reasons set forth above, PBGC's Motion for Default Judgment, (ECF No. 7), is **GRANTED**. Default judgment is entered against Commercial Investigation.

Pension Benefit Guaranty Corporation v. Commercial..., Not Reported in Fed....

Commercial Investigation is **ORDERED** to produce any and all documents and records responsive to the subpoena to PBGC within thirty (30) days of entry of this Opinion, and PBGC is awarded costs incurred in maintaining this action in the amount of $1,088. An appropriate Order and Judgment accompanies this Opinion.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 8718115

---

### Footnotes

1    *See Victory's Dawn, Inc. v. demons*, No. 21-9744, 2022 WL 3402491, at *3 (D.N.J. Aug. 12, 2022) (granting default judgment and finding proper service on LLC defendant because an individual was authorized to and did accept service on the LLC's behalf); *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *3 (D.N.J. May 18, 2021) (granting default judgment and finding proper service on corporation because the complaint was served on the corporation's officer).

2    The Court is not aware of any cases in the Third Circuit that have considered petitions to enforce administrative subpoenas filed by PBGC and thus turns to cases outside of this Circuit for guidance.

3    Going forward, it would be helpful for PBGC to provide a clear, affirmative declaration certifying to the Court that it does not possess any of the documents requested pursuant to the administrative subpoena.

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.